UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RAYMOND LEWIS,

                Plaintiff,

v.

JASON HANSON, JOSEPH SHARPE, SCOTT MERE, ZACHARY PECK, JOHN DOE 1, and JOHN DOE 2,

                Defendants.

Case No.   9:18-cv-12

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Raymond Lewis ("Lewis" or "Plaintiff"), by and through his undersigned attorneys, Sher Tremonte LLP, files this Complaint and alleges as follows:

## NATURE OF ACTION

1. Raymond Lewis brings this action against Defendants Jason Hanson ("Hanson"), Joseph Sharpe ("Sharpe"), Scott Mere ("Mere"), Zachary Peck ("Peck"), John Doe 1, and John Doe 2 in their individual capacities, pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("§ 1983"), for violating Lewis's rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

2. In April 2016, Defendants, all correction officers employed by the New York State Department of Corrections and Community Supervision ("DOCCS") at Bare Hill Correctional Facility in Malone, New York ("Bare Hill"), pulled Raymond Lewis, who was then 57 years old, out of his cell and brought him to a room in the Special Housing Unit ("SHU"). En route to the SHU and once there, Defendants took turns physically assaulting Lewis, punching and kicking him repeatedly, without any provocation or justification.

1

3. As revealed by Defendants' comments during the assault, Defendants physically attacked Lewis for the express and improper purpose of retaliating against Lewis for bringing a civil rights lawsuit against another correction officer.

4. The unprovoked and brutal assault caused Lewis severe bodily injuries, including multiple rib fractures and a collapsed lung.

5. Following the assault, Defendants willfully ignored Lewis's repeated pleas for help and unreasonably delayed providing medical attention. After Lewis's serious injuries had been identified and reported by medical staff in the facility, Defendants sought to cover up their wrongful conduct by filing baseless misbehavior reports against Lewis, claiming falsely, among other things, that they only used physical force against Lewis after he had exhibited aggressive behavior during a pat-frisk.

6. To this day, Lewis continues to experience pain and suffering resulting from the injuries he sustained during the assault.

7. For these egregious violations of Lewis's civil rights, Lewis seeks compensatory and punitive damages from Defendants.

## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under § 1983, and pursuant to 28 U.S.C. § 1343, because this is a civil action to redress the deprivation of Lewis's constitutional rights under color of state law.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this district.

## PARTIES

10. Lewis, age 58, is a citizen of the United States who resides in the Bronx, New York. At certain relevant times described herein, Lewis was housed in Bare Hill, the Upstate Correctional Facility ("Upstate") in Malone, New York, and the Clinton Correctional Facility in Dannemora, New York ("Clinton").[1]

11. Upon information and belief, Defendants Hanson, Sharpe, Mere, Peck, John Doe 1 and John Doe 2 are and/or were, at all times relevant herein, correction officers employed by DOCCS at Bare Hill.

12. At all times relevant herein, Defendants were acting under the color of state law and in the course and scope of their duties and functions as employees and officers of DOCCS.

13. Each Defendant is a "person" as that term is defined for purposes of § 1983.

## ALLEGATIONS

**Defendants Brutally Assaulted Lewis**

14. In April 2016, Raymond Lewis, then 57 years old, was incarcerated at Bare Hill. Lewis suffers from a variety of chronic medical conditions, including asthma.

15. On April 23, 2016, Hanson and two other correction officers, John Doe 1 and John Doe 2, entered Lewis's cell and escorted him to the foyer, where John Doe 1 proceeded to pat-frisk him. Lewis asked John Doe 1 why he was being pat-frisked, and was told that he would find out "in a couple of minutes."

16. Lewis was then handcuffed behind his back and taken into a van outside, in which he was made to lie on his stomach. Lewis again asked why he had been pat-frisked, and John Doe 1 replied, "Our buddy wants us to give a nigger like you the special treatment."

---

[1] Lewis was housed in Bare Hill in April 2016, transferred to Upstate in late April 2016, and then transferred to Clinton on or about August 18, 2016, where he was housed until his release on November 16, 2017.

17. While in the van, John Doe 1 stomped on Lewis's back four times and punched Lewis repeatedly in the side for several minutes.

18. When the van arrived at the SHU, John Doe 1 and John Doe 2 dragged Lewis out of the van by his feet, escorted him into a room in the SHU, and instructed him to face the wall.

19. Soon after, Defendant Hanson and certain other Defendants entered the room. Defendant Hanson told his colleagues, "This nigger gets the special treatment because he filed a lawsuit against one of our brothers." Defendant Hanson then struck Lewis in his head.

20. Upon information and belief, Hanson was referring to a lawsuit Lewis had filed in June 2015 against Brian Cowan (the "Cowan Action"), a correction officer at Franklin Correctional Facility. The Cowan Action was then pending in the United States District Court for the Northern District of New York.

21. After Defendant Hanson began the assault, he and certain other Defendants grabbed Lewis, threw him to the floor, and kicked and punched him for approximately 10 minutes. At some point during the beating, Lewis heard one defendant state, in substance, "Let's say he had a weapon," and another defendant state, in substance, "Let's just say he assaulted one of us."

22. After the beating, one or more of the Defendants pulled Lewis to his feet, uncuffed him, and then forced him to the floor again. One or more of the Defendants removed Lewis's shoes and stripped him of all his clothing, including his underwear, and left him naked on the floor for approximately five minutes before one of them threw a pair of underwear at him. Lewis was physically incapable of getting up, so two Defendants lifted him off the floor so that the underwear could be pulled on to Lewis's body.

4

23. Because Lewis was unable to stand without assistance, one or more of the Defendants leaned Lewis against the wall. Several minutes later, a nurse arrived with a camera and took several pictures of Lewis's injuries. Unable to bear the pain from his injuries, Lewis asked the nurse for pain medication, and was informed that he could not receive pain medication unless he signed up for sick call.

24. After the nurse left, Defendant Hanson remarked that Lewis looked like he wanted to hurt himself and instructed other Defendants to place Lewis on suicide watch. Defendant Mere was assigned to stand in front of the cell and guard Lewis. Two Defendants lifted Lewis under his armpits, led him inside the cell, and directed him to face the wall. As these two Defendants exited, Defendant Hanson entered the cell, grabbed Lewis by the back of his neck and threatened Lewis that "[i]f he hears anything about this, all this can happen again."

**Defendants Ignored Lewis's Requests for Help and Unreasonably Delayed Providing Necessary Medical Attention**

25. On the same day, sometime after the assault, Lewis began having difficulty breathing and worried he was having an asthma attack. Defendant Mere was not in front of the cell. Lewis was unable call out for help because he was too short of breath, and began kicking the cell door in an effort to get the attention of Defendant Mere.

26. Approximately ten minutes later, Defendant Mere appeared and asked why Lewis was kicking the door. Lewis explained that he was having trouble breathing and requested his asthma medication, an Albuterol sulfate spray, in his property. Defendant Mere promised that he would "look into" it and so Lewis stopped kicking the door.

27. Approximately one hour later, Lewis had not received his asthma medication and his breathing had become more labored. Defendant Mere was still out of sight, so Lewis began kicking his cell door until an unidentified correction officer arrived. When Lewis explained his

5

asthma problem and his need for the Albuterol spray, the officer replied, "People in hell need ice water," and walked away.

28.     In desperate need of his asthma medication, Lewis continued kicking the door of his cell, which finally drew the attention of another unidentified correction officer, who also promised to get Lewis his Albuterol spray if Lewis would stop kicking the door. Lewis complied and, in approximately fifteen minutes, the nurse who had taken pictures of Lewis's injuries showed up and let Lewis use his Albuterol spray.

29.     The next day, April 24, 2016, Lewis did not receive a breakfast tray. The correction officer passing out breakfast trays explained, "No food for you because you assaulted an officer." Lewis requested his daily medication, but the officer ignored him.[2]

30.     That same evening, Lewis continued to have difficulty breathing and walked to the door of his cell to inform Peck, the correction officer then on duty. Peck was not at his post.

31.     Over the next ninety minutes or so, Lewis made multiple requests for his Albuterol spray to various correction officers who passed by, including Sergeant Tamer ("Tamer"), all to no avail. Eventually, the officer who helped Lewis the day before appeared at Lewis's cell and, after hearing Lewis's request, returned approximately fifteen minutes later with the spray.

32.     At 5:00 a.m. the next morning, April 25, 2016, Lewis woke up with severe chest pains and difficulty breathing. He informed the correction officer in front of his cell that he needed immediate medical attention. The officer informed Lewis that if Lewis was examined and his condition was "not serious," he would be given a misbehavior report ticket and fined.

---

[2] Lewis later informed a senior correction officer that he had been denied his breakfast trays and medication. The officer stated that he would ensure Lewis received meals, but that medication was "up to the medical staff." Thereafter, Lewis did receive lunch and dinner, but did not receive his daily medication.

33. Despite the officer's threat, Lewis repeated his request and was eventually taken to the infirmary. A nurse and a doctor examined Lewis and determined that he needed to go to the hospital.

34. Lewis was transferred to Alice Hyde Hospital by ambulance. Once there, x-rays were taken and revealed that Lewis suffered from several fractured ribs and a collapsed lung. The doctor informed Lewis that had Lewis not sought further medical care, the injuries could have been fatal.

35. Lewis continued to receive medical treatment for his injuries and remained hospitalized until April 27, 2016.

36. Upon his release from the hospital, Lewis was transferred to Upstate, where he remained in the infirmary for an additional week.

**Defendants Filed False Misbehavior Report Tickets Against Lewis to Conceal Their Own Wrongdoing**

37. On April 28, 2016, while Lewis was in the infirmary at Upstate, he received five Tier III misbehavior report tickets filed by correction officers at Bare Hill.

38. One of the misbehavior report tickets, written by Defendant Hanson (the "Hanson Ticket"), alleged that Lewis's personal identifying number ("PIN") was used to make calls during the period from April 15 to April 22, 2016, when Lewis was supposedly forbidden from using the telephone. The ticket falsely stated "Lewis . . . was given a direct order by CO Kearney to not use the phones." In fact, Lewis had never been given such an order, nor did he use the phone at all during the time period described in the Hanson ticket.

39. As described further below, on May 6, 2016, Lewis was informed that an investigation by the Office of Special of Investigations ("OSI") of DOCCS had determined that

7

another inmate had used Lewis's PIN to use the phone during the time period described in the Hanson Ticket, and that the Hanson Ticket would be dismissed.

40. The second misbehavior ticket, written by Sharpe (the "Sharpe Ticket"), directly related to the pat-frisk that occurred before the assault on April 23, 2016. The Sharpe Ticket alleged that during the pat-frisk, Lewis "erratically threw his left elbow at [Sharpe], striking [Sharpe] in the left side of [the] chest," and "continued to violently struggle, throwing elbows and kicking his feet" while Sharpe attempted to control Lewis, stopping only when restraints were applied.

41. Contrary to the allegations in the Sharpe Ticket, Lewis complied with the orders he was given by Defendants during the pat-frisk, and did not throw his elbows or kick his feet at Defendant Sharpe. Upon information and belief, Defendant Sharpe fabricated the allegations in the Sharpe Ticket to provide a false justification for the injuries Lewis sustained in the assault.

42. On May 16, 2016, after a disciplinary hearing, Lewis was found not guilty of the conduct described in the Hanson Ticket, but guilty of the conduct described in the Sharpe Ticket. The hearing officer imposed sanctions of 90 days in the SHU, loss of recreation, packages, commissary and phone privileges, and recommended loss of three months of good time. Lewis appealed, and the decision was affirmed on July 20, 2016.

43. The third and fourth misbehavior tickets, written by Defendant Mere (the "Mere Tickets"), alleged that while in the SHU on suicide watch, Lewis was "slamming the right side of his body against SHU's cell number thirteens [sic] door as well as kicking the door using his left and right foot." As described above, Lewis kicked the cell door because he needed immediate medical attention. Upon information and belief, Defendant Mere fabricated the allegations in the Mere Tickets to provide a false justification for injuries Lewis sustained in the assault.

44. Though Lewis was found guilty of creating a disturbance in connection with each of the Mere Tickets at hearings on May 11 and 12, 2016, the hearing officers' decisions were reversed on June 20 and 28, 2016, respectively.

45. The fifth misbehavior ticket, written by Peck (the "Peck Ticket"), alleged that on April 24, 2016, Lewis "started to bang his right heal [sic] and slam his right shoulder into his cell door," and "did not comply" with an order to stop. The Peck Ticket further alleged that Lewis spoke with Tamer and calmed down but later resumed "kick[ing] his heal [sic] and slam[ming] his right side of his body against his cell door." Upon information and belief, Peck fabricated the allegations in the Peck Ticket to provide a false justification for the injuries Lewis sustained in the assault.

46. Lewis was found guilty of the conduct described in the Peck Ticket. Though that decision was reversed on June 20, 2016, it was later reinstated at a rehearing on July 5, 2016, and sanctions of counsel and reprimand were imposed.

**Lewis Exhausted the Administrative Remedies Available to Him**

47. On May 13, 2016, Lewis filed a grievance, assigned Grievance No. UST-58296-16 (the "Grievance"), with the grievance clerk against Defendants based upon the April 23, 2016 assault committed by Defendants and their subsequent effort to cover it up by filing false misbehavior tickets.

48. Upon information and belief, the Grievance was transmitted to Upstate Superintendent Donald G. Uhler ("Uhler"). On August 8, 2016, Uhler issued a decision denying the Grievance (the "August 8 Decision").

49. By the time Lewis received the August 8 Decision, he had been transferred to Clinton, where he was confined in the SHU.

9

50. Immediately upon receiving the August 8 Decision, Lewis completed the Notice of Decision to Appeal (the "Appeal Notice"), clearly indicating his intent to appeal the August 8 Decision to the Central Office Review Committee ("CORC").

51. Lewis was instructed to and did place the Appeal Notice at the door of his cell to be picked up by a correction officer.

52. Though a correction officer picked up the Appeal Notice, upon information and belief, the Appeal Notice was never delivered to CORC.

53. Because Lewis's Appeal Notice was not delivered to CORC, the administrative remedy of appealing to CORC was not available to him.

54. Because no other administrative remedies were available to Lewis, he effectively exhausted his administrative remedies.

**OSI Investigated the Allegations in This Complaint**

55. On May 5, 2016, Lewis was interviewed by Michael Germano ("Germano"), an officer from OSI.

56. Germano asked Lewis a broad range of questions regarding the events that form the basis of this Complaint, including, among other things, Defendants' assault of Lewis, Lewis's injuries and requests for medical treatment, and the misbehavior tickets that Defendants filed against Lewis. Lewis conveyed the substance of the allegations described in this Complaint to Germano.

57. On September 6, 2016, Lewis received a Notification to Complainant of Closure of Investigation from Germano and Assistant Deputy Chief Investigator Tom Knight indicating that upon investigation, "the OSI made the following finding: The allegation was found to be SUBSTANTIATED and has been referred for further action."

58. Despite a request submitted through counsel pursuant to the Freedom of Information Law, Lewis has not yet been able to obtain any additional information regarding the OSI investigation.

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

**Defendants Used Excessive Force Against Lewis in
Violation of the Fourth, Eighth and Fourteenth Amendments and 42 U.S.C. § 1983**

59. Lewis repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

60. At all relevant times, Lewis had a clearly established constitutional right under the Fourth Amendment to be secure in his person from unreasonable seizure through excessive force; a clearly established constitutional right under the Eighth Amendment not to be subjected to the unnecessary and wanton infliction of pain; and a clearly established constitutional right under the Fourteenth Amendment to bodily integrity and to be free from excessive force by law enforcement.

61. Any reasonable correction officer knew or should have known of Lewis's above-described rights at the time of the complained-of conduct. Thus, Defendants are not entitled to any absolute or qualified immunity for their wrongful conduct.

62. Defendants, pursuant to State and/or local custom, policy, decision, ordinance, regulation, widespread habit, usage and/or practice, intentionally used excessive force against Lewis, without his consent, placing Lewis in imminent apprehension of harmful contact and inflicting on him serious bodily injury.

63. As a direct and proximate result of Defendants' unlawful conduct, Lewis has suffered actual physical and emotional injuries, and other damages and losses as described herein.

64. Defendants' abusive conduct against Lewis, as described herein, was objectively unreasonable and shocking to the conscience in light of the facts and circumstances confronting them. Such conduct was malicious and showed Defendants' reckless and/or callous disregard of, and/or indifference to, the constitutional and statutory rights of Lewis.

65. Defendants acted in concerted and joint action with each other. None of the them took reasonable steps to protect Lewis from the objectively unreasonable and conscience-shocking excessive force of the others, despite being in a position to do so. Each Defendant is therefore liable for the injuries and damages resulting from the actions of all Defendants.

## SECOND CLAIM FOR RELIEF

**Defendants Acted in Deliberate Indifference to Lewis's Serious Medical Needs in Violation of the Eight Amendment and 42 U.S.C. § 1983**

66. Lewis repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

67. At all relevant times, Lewis had a clearly established constitutional right under the Eighth Amendment to be free from deliberate indifference to essential medical needs.

68. Any reasonable correction officer knew or should have known of Lewis's Eighth Amendment right at the time of the complained-of conduct. Thus, Defendants are not entitled to any absolute or qualified immunity for their conduct.

69. Despite knowing that Lewis had sustained serious injuries both before and after his arrival in the SHU, having inflicted those injuries themselves, Defendants were deliberately indifferent to Lewis's need for essential medical attention. Though a nurse took pictures of

Lewis's injuries, Defendants did not ask the nurse to provide Lewis with any medical attention. Indeed, in spite of Lewis's plea, the nurse refused to provide Lewis with any pain medication.

70. After the assault, while Lewis was in the SHU, Defendant Peck was frequently absent from his assigned post in front of Lewis's cell and repeatedly ignored Lewis's requests for medical care. Peck's failure to provide prompt medical attention to Lewis, particularly in light of his participation in and awareness of the assault and the resulting injuries Lewis had sustained in the assault, is clear evidence of his deliberate indifference to Lewis's medical needs.

71. As a direct and proximate result of Defendants' unlawful conduct, Lewis has suffered actual physical and emotional injuries, and other damages and losses as described herein.

72. Defendants' conduct was malicious and showed their reckless and/or callous disregard of and/or indifference to, the constitutional and statutory rights of Lewis.

73. Defendants acted in concerted and joint action with each other. None of them took reasonable steps to protect Lewis from the deliberate indifference of the others, despite being in a position to do so. Each Defendant is therefore liable for the injuries and damages resulting from the actions of all Defendants.

### THIRD CLAIM FOR RELIEF

**Defendants Retaliated Against Lewis for Filing the Cowan Action in Violation of the First Amendment and 42 U.S.C. § 1983**

74. Lewis repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

75. At all relevant times, Lewis had a clearly established First Amendment right to be free from retaliation for the exercise of protected speech. Any reasonable correction officer knew or should have known of Lewis's First Amendment right to free speech at the time of the

13

complained-of conduct. Thus, Defendant are not entitled to any absolute or qualified immunity for their conduct.

76. Lewis exercised his constitutionally protected right to free speech by filing the Cowan Action.

77. Defendants, pursuant to State and/or local custom, policy, decision, ordinance, regulation, widespread habit, usage and/or practice, physically assaulted Lewis and filed false misbehavior reports against him to cover up the assault.

78. As a direct and proximate result of Defendants' unlawful conduct, Lewis has suffered actual physical and emotional injuries, and other damages and losses as described herein.

79. Defendants' retaliatory animus for Lewis's filing the Cowan Action was a substantial and motivating factor in their use of excessive force and filing of false misbehavior reports against Lewis. Such conduct would deter a person of ordinary firmness from continuing to exercise his constitutionally protected right to free speech, and was intended to and did deter Lewis from exercising such right in the future. The conduct was also malicious and showed Defendants' reckless or callous disregard of, or indifference to, the constitutional and statutory rights of Lewis.

80. Defendants acted in concerted and joint action with each other. None of them took reasonable steps to protect Lewis from retaliation by the others, despite being in a position to do so. Each Defendant is therefore liable for the injuries and damages resulting from the actions of all Defendants.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Raymond Lewis prays for judgment from this Court as follows:

81. Compensatory and punitive damages against each Defendant, jointly and severally, in an amount to be proven at trial;

82. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and pre-judgment interest and costs to the fullest extent allowed by federal law; and

83. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Lewis demands a trial by jury on all issues triable by a jury.

Dated: New York, New York
        January 3, 2018

By: */s/ Theresa Trzaskoma*
    Theresa Trzaskoma
    Heather Han
    Emily Burgess
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Tel:212.202.2600
Email: ttrzaskoma@shertremonte.com

*Attorneys for Plaintiff Raymond Lewis*